HOOD, Judge.
Plaintiff, Henry Brothers, Inc., instituted this suit against Harold Bergeron to recover sums alleged to be due plaintiff on two unrelated contracts. It seeks, first, to recover $3,010.85 as the balance due on the purchase price of a metal building sold by plaintiff to defendant, and for the recognition of a lien and privilege on property owned by defendant. And, second, plaintiff seeks to recover $7,220.10 as damages for the alleged breach by defendant of a plumbing contract entered into between the parties.
Defendant answered, denying a breach of contract on his part, but alleging that plaintiff had violated both contracts and that both of said written agreements had been fraudulently altered. He filed a re-conventional demand praying for judgment against plaintiff for the aggregate sum of $108,181.55.
Judgment on the merits was rendered by the trial court in favor of plaintiff, Henry Brothers, and against defendant, Bergeron, for the sum of $3,007.50, with recognition of a lien and privilege in favor of plaintiff affecting the property on which the metal building was erected. Defendant Bergeron has appealed.
During the first part of the year 1968 Henry Brothers, Inc., was engaged in business as a general contractor and as the local distributor of some fabricated metal buildings which were manufactured in Texas. The principal office of that business was in Sulphur, Louisiana. The company was a family-owned corporation, the principal stockholders and officers being William F. Henry and his brother, Harry J. Henry. On July 8, 1968, Harry J. Henry’s connection with the corporation was suddenly ■ terminated by the other stockholders and directors, and thereafter Harry engaged in a separate business of his own, which was in competition to Henry Brothers, Inc. The record indicates that a considerable amount of animosity existed between Harry J. Henry and other members of his family, and particularly between him and his brother William.
Defendant Bergeron was engaged in business in Sulphur as a plumbing, heating and air conditioning contractor. He was doing business as “Bergeron Plumbing and Heating.”
Since this suit is based on two unrelated causes of action, each will be discussed separately.

Building Contract

On May J, 1968, plaintiff entered into a written contract with defendant under the terms of which plaintiff agreed to sell to Bergeron a steel building for the price of $7,010.85. Defendant paid $4,000.00 to be applied on the purchase price and no further payments were made on that contract. One of the demands made by plain *51 tiff in this suit is to recover the remaining balance of $3,010.85.
Plaintiff introduced in evidence the written contract on which it bases this demand. That agreement consists of a printed form, with most of the blank spaces filled out with a typewriter, and with some of the printed provisions stricken out, or obliterated, by diagonal lines typed over the printed provisions. The contract is dated May 3, 1968, and was signed by “H. J. Henry,” in behalf of Henry Brothers, Inc., and by Harold Bergeron. Harry J. Henry was serving as president of plaintiff company at that time.
The contract correctly describes the building which was sold, but a dispute has arisen between the parties as to whether Henry Brothers, under the terms of that agreement, was obligated to erect the building on the concrete slab which Bergeron had constructed for it. Plaintiff contends that it agreed merely to sell the materials needed for such a building, all of which were accurately described in the contract, and that it did not agree to erect it. Ber-geron contends that plaintiff had agreed to erect the building, and that the price which he agreed to pay for it included the cost of erecting it on his concrete foundation.
The printed form of the contract which was used by the parties contains two alternate provisions, followed by blank spaces, relating to the price which was to be paid for that building. The first of these alternate provisions obviously was to be used by the parties if they intended only that materials for the building were to be sold to the buyer, without any obligation on the part of the seller to erect it. The second alternate provision contained the wording, “Building erected on your concrete foundation,” and that was followed by blanks, which blanks could be used in inserting the price which was to be paid for the building plus the erection of it. This second alternate provision was to be used if the parties intended that the seller was to erect the building.
In the contract which plaintiff filed in evidence, the first alternate was completed, showing that plaintiff agreed merely to sell the materials for the building therein described, with freight allowed to Sulphur, Louisiana, for a price of $6,841.60, plus a tax of $169.25, making a total of $7,010.-85. The second alternate on the printed form, providing for the erection of the building, was crossed out completely by the use of diagonal lines typed over the printed provision. That contract shows, therefore, that plaintiff merely sold the materials to defendant, and that it did not obligate itself to erect the building.
Bergeron contends, however, that the contract as originally executed by the parties showed that the second alternate provision was to apply, and that Henry Brothers was obligated to erect the building as well as to furnish the materials. He takes the position that the written contract was fraudulently altered after the parties had signed it.
Bergeron testified that he and Harry J. Henry entered into the contract originally on May 2, 1968, while both parties were in Bergeron’s home. Harry Henry, of course, was acting in behalf of plaintiff corporation. When they agreed upon the terms, he said, Harry immediately filled out the blanks on two separate printed forms of contract with a pencil, and he and Harry thereupon executed both of those forms of contract. Harry Henry kept one of the penciled forms and Berger-on kept the other. He stated that the parties agreed that Henry Brothers was to erect the building on Bergeron’s concrete foundation, and that the penciled contract which they signed at his home specifically showed that the seller was to erect the building. Both parties understood at that time, Bergeron stated, that Harry was to have another form of contract typed the next day in the office of Henry Brothers, exactly like the penciled copies, and that he and Bergeron were to sign the new typed form of contract after it was prepared. A typed form of contract was *52 prepared the next day, and plaintiff and defendant both signed it.
Defendant contends that the typed form which he signed on May 3, 1968, contained provisions different from those shown on the contract which plaintiff filed in evidence here. He testified, for instance, that the second alternate provision, containing the words, “Building erected on your concrete foundation,” had not been crossed out or obliterated from the typed form of contract when they signed, and that the price to be paid by defendant had been inserted in the blanks following the above-quoted provision. According to his statements, therefore, the penciled copies and also the typed copy of the contract specifically provided that Henry Brothers was to erect the building. Bergeron also testified that when he signed the typed form of contract, no provisions were typed on the back of it, and that no corporate seal had been affixed to the agreement. The contract on which plaintiff relies here contains a number of “General Conditions of Contract” typed on the back of it, and a corporate seal has been affixed to the document.
Bergeron’s testimony is supported by that of Harry J. Henry and of Herbert Latio-lais, Jr., who was present when the penciled copies of the agreement were signed. Also, defendant offered as evidence a printed form of contract, with the blanks being filled in by pencil, showing the sale of the same building. This penciled form of contract is dated May 2, 1968, and is signed by Harry J. Henry, in behalf of the seller, and by defendant Bergeron. Defendant stated that it was one of the two forms which Harry Henry filled in with pencil and which both parties signed when they originally entered into the agreement.
Harry J. Henry testified that on May 3 he handed the other penciled copy of the contract to someone in the office of Henry Brothers to be retyped exactly as he had written it, and that after it was typed he examined the newly completed form of contract and noticed that the “erection clause” had not been crossed out, that nothing had been typed on the back of the form, and that there were no erasure marks on that form. He stated that he and Bergeron thereafter signed the typed form, and that this signed agreement was filed in the office of Henry Brothers.
The statements of the above-mentioned witnesses are in conflict with those of several other persons who testified at the trial. William F. Henry testified, for instance, that Henry Brothers did not agree to erect the building for Bergeron, and that the alternate provision of the agreement which called for erection of the building was specifically deleted. The reason for this, he stated, was because Ber-geron was not a union contractor, that his non-union activities had resulted in picketing at several of his job sites, and that plaintiff would have violated its building trade agreement with the union if it had agreed to erect the building for defendant. He testified as to the cost of the building to plaintiff, and explained that the selling price to Bergeron was fixed by computing the actual cost of the materials, plus a normal profit, without adding the substantial cost which would have been incurred for labor in erecting the building.
Joseph Nolen Vincent, the purchasing agent for Henry Brothers, testified that at the request of Harry J. Henry he typed the contract relied upon by plaintiff. He stated that after typing it, he handed the typed copy to Harry, that he and Harry then jointly proofread the entire agreement, and that Harry thereupon thanked Vincent and apparently approved.the form which had been prepared. He stated that Harry informed him at that time that “We weren’t going to erect the building, but we would furnish the anchor bolts because the anchor bolts always went with the building.” Vincent testified that the contract on which plaintiff relies in the suit is the same contract which he typed for Harry, and that no alterations or *53 changes have been made in it since it was signed.
An erasure mark appears on the contract being relied upon by plaintiff. The mark is in one of the blanks which follow the “erection clause” in the contract, and Bergeron points to it as supporting his position that the contract originally provided for the erection of the building and that it was later fraudulently altered. Vincent explained, however, that he had made the error when he was typing the contract, that he immediately erased the error, and that the erasure mark shown on the original contract was the one which he made at that time. He stated that upon completing the form of the contract he showed it to the office manager, Mrs. Darla Henry Larue, and inquired as to whether he should retype the entire contract because of that erasure, but that he was told then that the agreement was all right in that form, particularly since Harry J. Henry was in a hurry to get the matter completed. Mrs. Larue completely supports his testimony to that effect.
The evidence shows that shortly after the contract upon which plaintiff bases its case was executed Bergeron went to the office of Henry Brothers and obtained a copy of that contract. Defendant stated that he didn’t look at the copy immediately, but that he noticed later that nothing was typed on the back of the copy which was furnished to him. He stated that the copy of the final, or typed, contract which he received from the office manager of Henry Brothers at that time was in the possession of his attorney at the time of the trial. That copy, however, was not introduced in evidence.
We note that both the penciled form of contract produced by Bergeron and the typed form relied on by plaintiff provide a specific time within which “delivery of the materials will be made.” In neither of said contracts, however, is there any reference to the place where the building was to be located or the time within which it was to be erected. It seems to us that if the parties had intended for the seller to erect the building, the contract would have contained some provisions relating to the place and the time within which the erection was to be completed.
The trial judge accepted the version of the facts given by the witnesses called in behalf of plaintiff, and he particularly noted that he was impressed with the statements of Mr. Vincent. He rejected the conflicting testimony of witnesses called by defendant, stating “I do not accept the testimony to the contrary.” He concluded that plaintiff was not obligated under the provisions of the contract to erect the building, and that plaintiff thus was entitled to recover the balance of the purchase price from Bergeron.
The trial judge’s findings of fact, particularly those involving the credibility of witnesses, are entitled to great weight on appeal and his conclusions as to the facts will not be disturbed unless found to be clearly in error. Evers v. State Farm Mutual Automobile Insurance Company, 187 So.2d 217 (La.App. 3 Cir. 1966); Central Louisiana Electric Company, Inc. v. Gamburg, 200 So.2d 733 (La.App. 3 Cir. 1967).
We think the evidence supports the conclusion reached by the trial judge that the typed form of contract which was offered in evidence by plaintiff, and which is relied on by it in this case, accurately reflects the agreement which was entered into by the parties. We find that that contract was not altered or changed after it was signed. Our conclusion is that Henry Brothers was not obligated under the contract to erect the building for Bergeron, and that plaintiff is .entitled to recover from defendant the balance due on the purchase price of the building, less any credits which may be due defendant.
The trial judge found that the balance due on the contract was $3,010.85, but that plaintiff failed to deliver some of the materials which had been purchased, and *54 that Bergeron had to purchase the missing materials elsewhere at a cost of $883.25. He allowed defendant credit for that amount, and concluded that Henry Brothers was entitled to recover from Bergeron the remaining difference of $2,127.60.
Bergeron in his reconventional demand, contends that plaintiff is indebted to him for the aggregate sum of $46,020.55, because of the fraudulent altering of the contract and because of plaintiff’s failure to erect the building. This includes a claim of $4,120.00 representing the cost of erecting the building, and a claim of $40,000.00 for mental anguish, injury to his business, and other damages. We have concluded that the contract was not altered and that Henry Brothers was not obligated to erect the building. The trial judge thus correctly rejected Bergeron’s claim for the two items just mentioned.
Included in Bergeron’s reconventional demand, however, are claims aggregating $1,900.55, representing the cost of materials which he purchased in order to complete the building, hauling expenses and trips to Houston, Texas. The credit which was allowed by the trial court, in the amount of $883.25, is the sum of two checks which were issued by Bergeron to American Steel Company, Inc., aggregating $619.49, and one check issued by Ber-geron to Solar Supply for $263.76. The trial" court apparently rejected Bergeron’s unsupported testimony that other expenses were incurred by him in obtaining the necessary materials for the building.
William F. Henry testified that he and Bergeron checked the materials which were delivered, and that some shortages were found. He stated, however, that on the following day Bergeron picked up all of the materials which were missing, and thus that Henry Brothers made a full delivery of all building materials which were sold to Bergeron pursuant to the contract of May 3, 1968.
We cannot say that the trial judge erred in concluding that Bergeron did not incur any expenses, other than those represented by the three above-described checks aggregating $883.25, in obtaining the missing materials called for under the contract of May 3, 1968. We thus concur in the finding of the trial court that Bergeron is entitled to a credit of $883.25, but that all of the other demands made by him in connection with that contract should be re-j ected.
We affirm that part of the trial court’s judgment which condemns Bergeron to pay Henry Brothers the sum of $2,127.60, representing the balance due on the building contract.

Plumbing Contract

During the early part of 1968 Henry Brothers was engaged in constructing a building for Textile Paper Products, Inc., in DeQuincy, Louisiana. On February 20, 1968, it entered into a written contract, or subcontract, with Bergeron to do some of the plumbing work which had to be performed on that job. The contract provided that plaintiff was to pay Bergeron $2,-961.00 for this plumbing work.
Pursuant to that agreement, Bergeron began to “rough-in” the plumbing sometime in June, and after working there a few days he completed what he called the “preliminary rough-in” of the plumbing on June 29, 1968. He then told William J. Henry that he intended to take a “vacation” until the construction of the building progressed to a point where he could begin the “final phase” of the plumbing. He also informed Henry at that time that the latter could contact defendant’s brother, Robert Bergeron, if he needed any plumbing work done while defendant was away. William Henry then did not see Bergeron from about June 30 until the latter part of July. Defendant stated that he left for Colorado on July 13, 1968, and was gone for eight days.
The building was ready for' additional plumbing work on July 13, and plaintiff notified defendant of that fact by letter dated July 14. In that letter plaintiff informed defendant that unless Bergeron proceeded immediately with the installation *55 of the plumbing, it would be forced to complete it and charge the expenses against defendant’s contract account. Plaintiff was unable to contact defendant or his brother for over a week, although several attempts were made to do so, and plaintiff thereupon began soliciting for bids from other plumbing contractors to complete the work. The evidence shows that plaintiff’s contract with Textile Paper Products called for penalties for delays in construction and for demurrage, and thus it was important to plaintiff that the plumbing work be completed promptly.
Henry Brothers received a bid of $6,521.00 from one plumber, and a bid of $6,317.00 from another. It felt that these were too high, so it eventually engaged Paul E. Trouth, d/b/a Paul’s Plumbing, to complete the plumbing work on a “cost plus” basis. The work was completed by Trouth at a cost to plaintiff of $6,420.01.
Plaintiff contends here that defendant breached the plumbing contract, and it seeks to recover damages in the sum of $6,420.01 for such breach. It also demands judgment against defendant for the additional sum of $800.00, being the amount by which it allegedly overpaid Bergeron for work performed under the plumbing contract.
Defendant has reconvened for damages in the aggregate sum of $62,161.00. Alleging that plaintiff breached the plumbing contract by engaging someone else to complete the job, Bergeron seeks to recover $1,561.00 as the balance due under the contract, $600.00 for additional work performed, and $60,000.00 for mental anguish, injury to his business and other damages.
The evidence shows that Bergeron used non-union labor, and that he became involved in some serious labor disputes beginning in May, June or July, 1968. He was engaged in negotiations with the National Labor Relations Board about that time, and eventually he instituted proceedings before that board. Sometime during the latter part of July pickets were set up around defendant’s place of business and at the sites of some of the jobs which he was performing.
William F. Henry testified that sometime during the latter part of July, and before Paul’s Plumbing was engaged, he saw Bergeron and told him that Henry Brothers was going to have to engage another plumbing contractor to finish the contract, and that Bergeron simply told him “to go ahead and get somebody.” William Henry stated that defendant “had no objection” to turning the work over to Paul’s Plumbing, that he never offered to complete the contract, that none of defendant’s workmen ever showed up to do the work, and that Bergeron “gave Paul Trouth permission to finish out his contract.” He quoted Ber-geron as saying “Fine, go right ahead,” and “go ahead and let Paul do it.”
Paul Trouth testified that he began working for Henry Brothers on the Textile Paper Products building, completing Ber-geron’s duties under the subcontract, about August 4 or 5, 1968. He stated that defendant was being picketed at that time, that Trouth had the pickets taken off that location so he could go in and complete the work, that he contacted Bergeron before he started, and that he was informed by the latter that it was all right for him to “take over the job.”
Bergeron testified that he didn’t complete his work under the subcontract because he was “revoved from the job in order to have the picket removed.” He takes the position that he was willing and able to finish the work called for by the contract, and that plaintiff breached the agreement by having Trouth come in to do the rest of the work. He concedes that he was trying to get “this picket line business straightened out,” and that he told Trouth that as soon as he got “released” from the job it would be all right for Trouth to take it over. He stated that because of these labor troubles he was “taken off” of about ten jobs, two of them being for Henry Brothers.
*56 Although each party to this suit contends that the other breached the plumbing contract, the trial judge concluded, in effect, that the parties by mutual agreement had terminated the plumbing contract and had allowed Trouth to take it over. We agree with that finding.
In view of Bergeron’s labor problems, there was a serious question as to whether he would have been able to complete the job called for by the subcontract, and thus he faced the risk of being liable for damages for breach of contract, if he, in fact, had not already defaulted by the time Trouth took over the work. Plaintiff also was anxious to complete the work, to avoid liability for penalties and demurrage. It thus was advantageous to both parties that the contract between plaintiff and defendant be terminated, and that plaintiff thereafter be free to make arrangements with some other plumbing contractor to complete the job. We think the negotiations between William Henry and Bergeron amounted to a mutual agreement that the plumbing contract was to be terminated, and that the releases obtained by both parties pursuant to such an agreement constituted adequate consideration for it. We thus agree with the trial judge that neither party is entitled to recover damages from the other for breach of contract.
Since the plumbing contract was terminated by mutual agreement, Bergeron is entitled to be compensated for the work which he actually performed under that contract. The only evidence we have found in the record which indicates the value of the work performed by Bergeron is the estimate given by Paul Trouth that the value of Bergeron’s work was “roughly $600.00.” The trial judge concluded, correctly we think; that that was the value of the work performed by Bergeron, and that defendant was entitled to recover that amount for his work.
The evidence shows that plaintiff paid the sum of $1,480.00 to defendant on June 11, 1968, to apply on this plumbing contract. That payment apparently was made before defendant began roughing in the plumbing, since the record shows that he worked only three or four days and completed that part of the work on June 29. We agree with the trial judge that plaintiff thus overpaid defendant by $880.00, and that Henry Brothers is entitled to recover that amount from Bergeron.
Since we have concluded that the plumbing contract was terminated by agreement of the parties, it is unnecessary for us to consider the claim made by defendant that that agreement was fraudulently altered after it was executed.

Conclusion

The trial court rendered judgment in favor of plaintiff and against defendant for $3,007.60, that being the total amount due plaintiff under the building contract and under the plumbing contract. No issue has been raised on this appeal as to the correctness of that part of the trial court’s judgment which recognizes a lien and privilege affecting the property on which defendant’s metal building is now located. We find no error, therefore, in the judgment rendered by the district court.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.