431 So.2d 1063 (1983)
Ronald J. PREVOST and Patti H. Prevost
v.
J.K. COWAN, Sr. Contracting Company, Inc., Continental Insurance Company and Hillary T. Hernandez.
No. 82 CA 0261.
Court of Appeal of Louisiana, First Circuit.
March 8, 1983.
Rehearing Denied May 11, 1983.
*1065 Edward J. Walters, Jr., Charles Albright, II, Baton Rouge, for plaintiffs-appellant.
James B. Doyle, Baton Rouge, Calvin C. Fayard, Jr., Denham Springs, for defendants-appellees.
Before COVINGTON, LEAR and LANIER, JJ.
LEAR, Judge.
This suit arises as the result of an automobile accident which occurred on January 23, 1979, involving Patti Prevost, who was driving a Ford van, and Hillary T. Hernandez, who was driving a dump truck owned by J.K. Cowan, Sr. Contracting Company, Inc. and insured by Continental Insurance Company. A jury trial was held on November 2 and 3, 1981, at which time defendants stipulated liability and in exchange plaintiffs agreed to limit their demands for damages to $500,000.00, i.e., the value of Cowan's insurance policy with Continental. The jury responded to the following interrogatories in the affirmative:
 Did Mrs. Prevost sustain injuries for which
she may recover damages from the
defendant? .....................................Yes
 Did Mr. and Mrs. Prevost sustain property
damages for which they may recover
damages from the defendant? ....................Yes
The jury was also provided with an itemized list for use as a guide. They assigned the following sums for damages sustained by plaintiffs:

Physical pain and suffering...........$12,500.00
Permanent injuries....................NONE
Mental pain and suffering ............ 12,500.00
Future pain and suffering ............NONE
Vehicle damage........................ 7,000.00
Auto Rental........................... 305.28
Damaged clothing...................... 50.00
Medical expenses...................... 2,941.64
Future medical expense................NONE
Psychiatric expense................... 1,595.00
Future psychiatric expense............NONE
Loss of wages......................... 5,000.00
Future loss of wages..................NONE
Housekeeping and child care...........NONE
Future housekeeping expense...........NONE
Towing expense........................ 72.40
 __________
TOTAL.................................$41,964.32

Plaintiffs appeal, arguing that the amounts awarded to them by the jury are inadequate; defendants answer the appeal, seeking a reduction in the amount awarded for mental pain and suffering.
The accident occurred on a two lane roadway when the driver of the dump truck lost control of his vehicle and collided head-on with the driver's side of Mrs. Prevost's van. Mrs. Prevost was taken to the emergency room of Our Lady of the Lake Hospital where she was examined by her family physician, Dr. Lott. Dr. Lott found that she had a fracture of the right forearm, a cut on the lower lip and the left thigh, various bruises about the head, chest, abdomen, knees, both legs, both elbows and both forearms. In addition, she was complaining of a headache and pain in her neck. Dr. Lott did not keep Mrs. Prevost in the hospital overnight, but did refer her to Dr. Jack Loupe, an orthopedic surgeon.
Dr. Lott continued to see Mrs. Prevost at frequent intervals over the next few months. Within two or three days after the accident, he treated her for a hematoma on the left thigh and due to complaints of pain in the left knee he x-rayed the knee but found no fracture. Several days later, when Mrs. Prevost complained of severe lower abdominal pain, he prescribed antispasmodics and pain medication. Mrs. Prevost continued to have headaches, and on February 17 Dr. Lott advised her to enter the hospital where she had a brain wave test, skull x-rays, and computerized tomography of the brain performed. All test results were normal. However, Dr. Lott testified that the continuing headaches were an indication that Mrs. Prevost had suffered a mild concussion at the time of the accident. On February 26, Dr. Lott had Mrs. Prevost undergo a resting electrocardiogram and an exercise tolerance electrocardiogram *1066 due to severe pains in her chest. The results of both tests were normal. Dr. Lott testified that immediately after the accident and for several weeks thereafter, he detected muscle spasms in the plaintiff's shoulder and back area. Therefore, he advised her to undergo a program of physical therapy which she did, beginning on March 5. Dr. Lott saw Mrs. Prevost again at the end of April at which time she complained of mental depression and had lost twenty-two pounds.
Dr. Colby, a psychiatrist, began seeing Mrs. Prevost on August 7, 1979, and saw her thereafter at approximately monthly intervals for six months. From January of 1980, to date of the trial, he saw her three times. Dr. Colby testified that Mrs. Prevost's primary problem was a dread or phobia of a similar accident happening again. She had frequent dreams about the accident, and was unable to either drive a car or ride as a passenger in a car comfortably. Her sleep pattern was out of order, she was not able to relax, and it was difficult for her to focus her attention or concentrate on one thing for any length of time. Dr. Colby diagnosed this as post-traumatic stress reaction. He stated that Mrs. Prevost "has been a good patient and has worked hard at trying to increase her activities and get back into a car and go on with her life, but she just hasn't been successful." He testified that she was simply functioning at a different level than she had prior to the accident. It was Dr. Colby's opinion that she would never be back to the level of tolerance, strength or resilience that she had prior to the accident. Dr. Colby prescribed various medications for Mrs. Prevost, including a tranquilizer, Valium, and an antidepressant, Norpramin. In addition, he referred her to a behavior modification therapist whom she saw approximately thirty times.
All of the plaintiffs' witnesses described Mrs. Prevost as a young woman who, prior to the accident, was energetic in taking care of her home and her family, and in addition worked approximately twenty hours per week in a physician's office. Mrs. Prevost's husband testified that as a result of physical injuries received in the accident, she was forced to stop working for several weeks. He further testified that even after her physical injuries had healed, she was still unable to return to work because of severe mental depression. Mrs. Prevost's mother-in-law, Mrs. Augusta Prevost, testified that she became withdrawn, depressed, and was constantly crying. In addition, she seemed to lose interest in taking care of her children and her house.
Several months after the accident, the Prevosts moved to Arabia. During this time, Mrs. Prevost testified that her emotional problems lessened and she was better able to function as a wife and mother. It was brought out during the trial that this may have been due to the fact that the environment in which she was living was very protective, i.e., the company for which her husband worked provided for all of the family's needs and there was very little pressure on Mrs. Prevost. While in Arabia, Mrs. Prevost applied for and was hired for a job. However, she testified that several days before she was to begin working, she became nervous and upset and was unable to take the job.
At the time of the trial, the Prevosts had moved back to the United States and Mrs. Prevost had been working for approximately six weeks (ten to twelve hours per week) in the job she had held prior to the accident. Dr. Colby, Mrs. Prevost's psychiatrist, testified that sometime within the next twelve months she should be able to increase her work schedule to the twenty hours per week which she maintained prior to the accident. It was Dr. Colby's opinion that Mrs. Prevost was only able to work at this time because she had returned to her former job, knew all of the people, was familiar with the work and was, therefore, in a protective and supportive environment. Dr. Colby testified that Mrs. Prevost would otherwise be unemployable as she was unable to adjust to a new job at this time.
Appellants argue on appeal that the jury was in error in failing to award any monies for future loss of wages or for impairment *1067 of future earning capacity, and in awarding only $5,000.00 for past lost wages.
The trier of fact is given much discretion in awarding damages. LSA-C.C. art. 1934(3). The appellate court in reviewing an award to determine if there has been an abuse of this "much discretion" must look first to the facts and circumstances surrounding the particular case. If it is determined that the award is either excessive or inadequate, the court may then use prior awards to aid it in fixing an appropriate award. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The reviewing court may then amend the award such that it is lowered to the highest or raised to the lowest point which is reasonable within the discretion afforded the trier of fact. Emerson v. Empire Fire & Marine Insurance Company, 393 So.2d 691 (La.1981); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979).
At the time of the accident, Mrs. Prevost was thirty years old, had graduated from high school, and had completed one semester of college. She had been employed at various times as a clerical secretary, a typist, and a bookkeeper. For several years prior to the accident, she worked approximately twenty hours per week in a physician's office earning a salary of $600.00 per month.
Dr. Colby, Mrs. Prevost's psychiatrist, testified that, due to the effects of the accident, Mrs. Prevost is still experiencing emotional problems, and that these problems are interfering with her ability to resume employment. However, he apparently felt she was making progress, as it was his opinion that she should be able to return to her customary employment schedule of twenty hours per week within six months to one year.
Dr. Jan Duggar, an economist, testified that, assuming Mrs. Prevost was unable to work for five years, and taking into account anticipated pay increases, and a suitable discount rate, the loss in wages would be approximately $40,000.00.
With respect to loss of future wages, we find that plaintiffs have proven minimal damages in this area, and therefore the jury abused its discretion in failing to award any monies for this element of damages. Reck v. Stevens, supra. Considering all of the evidence presented at trial, the lowest amount which the jury could reasonably have awarded plaintiffs is a sum of $8,000.00, representing a loss of future wages for a period of one year.
After a thorough review of the record, we find no abuse of discretion in the failure of the jury to award damages for impairment of future earning capacity.
Regarding loss of past wages, plaintiffs presented evidence at trial showing that at the time of the accident Mrs. Prevost was working approximately twenty hours per week in a physician's office and was earning a salary of $600.00 per month. As a result of the accident, she was unable to work from the time the accident occurred to just prior to the date of the trial. Dr. Duggar, the economist, testified that Mrs. Prevost's total in lost wages from date of the accident to date of the trial was $20,940.00.
Based on the above, we find that the Prevosts have proven a loss of past wages in the amount of $20,940.00 and, therefore, the jury's award of $5,000.00 for loss of past wages is an abuse of discretion. Reck v. Stevens, supra. The award for lost wages is hereby increased by $15,940.00.
Next appellants assign as error the jury's failure to award damages for future pain and suffering and future psychiatric expenses. Although Mrs. Prevost has fully recovered from the physical injuries received in the accident, there is uncontradicted testimony from all of the witnesses that she is still suffering emotional problems. In light of this, the failure of the jury to award any damages for future mental pain and suffering and future psychiatric expenses is an abuse of discretion. Reck v. Stevens, supra. We find that the lowest amount to which Mrs. Prevost is entitled for future pain and suffering to be *1068 $5,000.00. Therefore, plaintiffs are entitled to an award of $5,000.00 for future pain and suffering.
With respect to damages for future psychiatric expense, Dr. Colby, Mrs. Prevost's psychiatrist, testified that she should continue to see a psychiatrist and a behavior modification therapist. He estimated that her expenses for this treatment would be $1,200.00 to $1,500.00 per year for two years. We find that the Prevosts are entitled to special damages of $2,400.00 for future psychiatric expense.
Appellants argue that the jury was in error in failing to award either past or future housekeeping and child care expenses. The law does allow, as an element of damages, reasonable housekeeping expenses necessitated by the incapacity of the wife. Edwards v. Lewis Grocery Company, 391 So.2d 13 (La.App. 2nd Cir.1980). However, in this instance, there was testimony that it was customary for Mrs. Prevost to employ a housekeeper, and that she had in fact employed a housekeeper prior to the time of the accident. Therefore, we find the decision of the jury denying damages for housekeeping expenses to be correct.
Next, appellants argue that they should be allowed, as an element of damages, interest payments on loans taken to meet expenses necessitated by the accident. The trial judge, ruling that this was not a compensable element of damages, refused to admit evidence on this point. Therefore, plaintiffs introduced as proffer statements of interest amounting to $2,632.53 paid on several ninety day loans.
Even assuming that interest is a compensable element of damages, plaintiffs are not entitled to reimbursement under the facts in this case. Plaintiffs allege that the loans were necessary to pay the medical bills for Mrs. Prevost, the payments on a new automobile to replace the van damaged in the accident, and a housekeeper's wages. However, plaintiffs had both medical and automobile insurance to cover the bills, and the record contains testimony that the plaintiffs had employed a housekeeper prior to the time of the accident. Therefore, the trial judge was correct in denying plaintiffs' request for reimbursement of interest as part of damages.
Lastly, appellants argue that the jury abused its discretion in awarding only $25,000.00 for plaintiffs' general damages. Defendants answered the appeal, seeking a reduction in the $12,500.00 award given for past mental pain and suffering. Because much discretion is left to the trier of fact when assessing quantum of damages, awards may be disturbed only when the record clearly reveals abuse of this much discretion. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Ashworth v. Smith, 386 So.2d 1016 (La.App. 3rd Cir.1980). We find this award for general damages to be neither excessive nor inadequate and, therefore, it will not be disturbed on appeal.
Accordingly, the judgment of the trial court is amended and plaintiffs are awarded $8,000.00 for loss of future wages, $5,000.00 for future mental pain and suffering, and $2,400.00 for future psychiatric expenses. In addition, plaintiffs are awarded an additional $15,940.00 for past loss of wages. Therefore, the damage award is increased by $31,340.00, with legal interest thereon from date of judicial demand until paid. LSA-C.C. art. 2924. Costs are to be paid by defendant-appellees.
AMENDED AND AFFIRMED.