463 So.2d 923 (1985)
TR DRILLING CO., INC., Plaintiff-Appellant,
v.
Alton H. HOWARD, Defendant-Appellee.
No. 16760-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
*924 Hudson, Potts & Bernstein by W. Craig Henry, Monroe, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Haynes L. Harkey, Jr., Monroe, for defendant-appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
TR Drilling Co., Inc. filed suit against Alton Howard for balance due on a promissory note. Howard answered, reconvened and filed a third party demand against TR and its president, Richard Guerriero. After trial on the merits, the lower court, in excellent written reasons for judgment, rejected the demands of all the parties, concluding that the suit for balance due on the note failed because of partial failure of consideration or mutual rescission of their agreement, that TR rendered sufficient services to Howard, before the breach or mutual rescission, to be entitled to retain a partial payment made on the note on July 11, 1980, and that Howard failed to prove damages. Plaintiff appeals the rejection of the balance due on its note and defendant answers that appeal contending the trial court erred in rejecting his reconventional and third party demands. For the reasons hereinafter expressed, we affirm the lower court judgment in its entirety.

FACTUAL BACKGROUND
During the fall of 1979 and early 1980, defendant Howard, with the assistance of self-styled "lease hound" Percy Golson, acquired certain mineral leases which eventually covered approximately 2000 acres in Arkansas in what is known as the Bois d'arc field. These were the so called "Bobo" leases and others covering the surrounding properties. Golson received a 1/16th override interest in return for his efforts. The leases contained short term drilling delays.
*925 The "oil boom" existing at the time created volumes of activity and drilling rigs, although not impossible, were difficult to engage.
Howard, though a successful businessman, was relatively inexperienced in the details of mineral development and obviously relied to a great extent upon Golson.
During this time, Richard Guerriero was sole stockholder in plaintiff corporation, TR Drilling, which owned three small rigs for shallow drilling. Guerriero, who has a degree in petroleum engineering, was the manager as well as sole stockholder of TR.
Through Golson's efforts, Guerriero and Howard had several meetings and ultimately negotiated a "deal" which is the subject of this litigation. As a result of their negotiations, Guerriero's attorneys prepared and, on January 5, 1980, the appropriate parties signed:
(1) A promissory note from Howard to Guerriero in the amount of $100,000, payable on or before July 6, 1980, ostensibly for 25% of the shares of stock in TR Drilling;
(2) A pledge of that stock from Howard to Guerriero as security for the above note;
(3) A "consulting agreement" between Howard and TR Drilling; and
(4) A promissory note from Howard to TR Drilling in the amount of $275,000 payable on or before July 6, 1980, executed in connection with the "Consulting Agreement."
On July 11, 1980, Howard paid the $100,000 note to Guerriero and received his pledge agreement. He also paid $135,000 to TR Drilling on the second note. On October 23, 1980, Howard wrote a "default" letter to Guerriero in care of TR Drilling in which he contended that Guerriero and TR had not lived up to the agreement as contemplated and further declined to pay the $140,000 balance due on the second note. Ultimately, on July 8, 1981, TR Drilling filed this suit for the $140,000 balance due on the $275,000 note, plus interest and attorney's fees. Howard answered the suit pleading total failure of consideration and filed a reconventional demand and a third party demand against Guerriero and TR seeking return of all payments made on both notes and damages for failure to timely complete an oil well.
The trial centered around what the "true agreement" between the parties to this litigation was. Guerriero contended at trial primarily that the "true deal" struck between the parties was that Howard simply purchased 25% of the stock in TR for $375,000 and that the two notes and "Consulting Agreement" were prepared at Howard's request in order for him to obtain a tax benefit by writing off $275,000 as a production expense. Alternatively, Guerriero contended that if the consulting agreement meant anything, it meant exactly what it said and that it had been performed. Howard basically contended that at the time of the agreement, he considered the TR stock virtually worthless and that his purpose in entering into the agreement was to obtain an advantage in having access to TR's drilling rigs to meet his deadline on the Arkansas leases and additionally, that Guerriero agreed to render personal services to Howard as a petroleum engineer and agreed to take over development and management of the leases in the Bois d'arc field. Howard contended he signed the notes and other documents because he thought Guerriero's attorneys were serving some other purpose of Guerriero's.
The lower court found that the documents that constituted the "written agreement" were ambiguous and did not set forth the true agreement between the parties. Noting much of the evidence to be conflicting and irreconcilable, and commenting that some of the evidence adduced at trial could be interpreted to support Guerriero's version of the agreement and some could be interpreted to support Howard's version, the lower court finally concluded that the preponderance of the evidence as a whole supported neither party's contentions completely. Therefore, after considering the totality of the evidence, the lower court made the following factual findings as deduced from that evidence:

*926 (a) That Howard was relatively uninitiated in the details of mineral development and relied heavily on Golson's advice. He already owned or controlled at least three wells when he acquired the leases involved in this suit and was led to believe the prospects of profitable production on them were excellent. Howard's basic concern at the time of his first contacts with Guerriero was time and the desire and necessity to obtain drilling services and start a well on the new leases;
(b) That Howard felt that part ownership in TR would give him some priority in the assignment of the rigs and stock ownership, from Howard's point of view, was a principal motive of the agreement, wholly apart from the actual value of the stock or the corporation itself;
(c) That the actions of the parties after the agreement was consummated were inconsistent with Guerriero's contention that only a stock transaction was involved. That the evidence was clear that the parties intended that Guerriero do more than give the "advice" and "consultation" that the written "Consulting Agreement" mentioned; that in accordance with the true agreement, Guerriero performed substantial personal management services for Howard with reference to the mineral properties Howard already owned prior to obtaining the "new leases"; and that Guerriero performed some services in connection with the new leases and the development of the Bois d'arc field;
(d) That the true agreement between the parties contemplated that Guerriero would supervise the completion of a new well and the subsequent development of the Bois d'arc leases notwithstanding the drilling contract entered into between Howard and TR for the new well; that Guerriero did perform some supervisory functions as contemplated by the original agreement in this regard; but that Guerriero breached the agreement by failing to complete the first well on the new leases and by failing to proceed with plans for its further development; that after a disagreement over a pump for the new well, Guerriero was impossible to find or to deal with; that Guerriero's failure to complete the first well and go further with preparation for further development created serious problems, general delay and additional expense to Howard;
(e) That when Howard paid $235,000 on July 11, 1980, he was satisfied he had value received for that payment;
(f) That there was a partial failure of consideration, however, on the note sued upon; that the dollar amount of that partial failure of consideration could be calculated according to the actions of the parties themselves in that after the drilling of the new well and the subsequent dispute, the parties mutually terminated their association and agreement; and that accordingly, neither owes the other any money.
The trial court, in accordance with its findings summarized above, rejected the demands of all parties and cast TR, Howard and Guerriero for 1/3 each of the costs of the suit.
TR appeals the judgment of the lower court specifying the following errors:
(1) The trial court erred in finding that any part of the $275,000 note was given for services to be performed by Guerriero rather than for the 25% interest in TR Drilling;
(2) Alternatively, if the trial court was correct in finding that some or all of the $275,000 note was given in consideration for services to be performed by Guerriero, then the trial court erred in finding that the Consulting Agreement was not the entire agreement between the parties as relates to services to be performed or that there was any breach of any agreement to provide services so that there was a partial failure of consideration;
(3) The trial court erred in failing to find that Howard had failed to put TR Drilling in default under the Consulting Agreement and therefore could not refuse payment under the note;

*927 (4) The trial court erred in finding that there was a mutual termination of the contract between Howard and TR Drilling; and
(5) The trial court erred in fixing the amount of the partial failure of consideration without any proof of the value of that failure.
Howard answered the appeal contending the trial court erred in its rejection of his reconventional demand and third party demand.
We consider appellant's specifications of error first.

SPECIFICATION OF ERROR NO. 1
Did the trial court err in finding that any part of the $275,000 note was given for services to be performed by Guerriero rather than for the 25% interest in TR Drilling?
Under this specification, appellant contends that Guerriero's version of the agreement, whereby the total amount of $375,000 was given as payment for the purchase of the stock in TR Drilling, was proved by the evidence and that the trial court was clearly wrong in finding otherwise. Appellant argues that Guerriero performed services for Howard simply because of Howard's oral agreement to give Guerriero a 1/16th override in the Bois d'arc development and other new developments and not because of any provisions of the January 5, 1980 Consulting Agreement.
Although parol evidence is inadmissible to vary the terms of a written contract, La.C.C. art. 2276, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. White v. Rimmer & Garrett, Inc., 340 So.2d 283 (La.1976); Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La. 1981).
Appellant contends here that the Consulting Agreement is meaningless. By doing so, appellant implicitly admits that the Consulting Agreement is susceptible to more than one interpretation, is uncertain or ambiguous as to its provisions and that the true intent of the parties cannot be ascertained from the language used.
Appellee points out in brief that appellant's alleged reliance not on the Consulting Agreement but on the 1/16th override, overlooks the evidence that most of Guerriero's services were performed in connection with the wells that Howard already had an interest in when the deal was struck. According to the testimony, the promised override would not have applied to those properties.
The lower court did not err in permitting the introduction of parol evidence to explain the ambiguous and uncertain written provisions of the consulting agreement in order to ascertain the real intent of the parties to this entire transaction. The trial judge's factual finding that the $275,000 note was given for services to be rendered in accordance with the true intent of the Consulting Agreement, and not for the stock sale, was not clearly wrong and we will not disturb it. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).

SPECIFICATION OF ERROR NO. 2
Here appellant argues that alternatively, if the trial court was correct in finding that some or all of the $275,000 note was given for services to be performed by Guerriero, then the trial court erred in finding that the Consulting Agreement was not the parties' entire agreement for services to be performed or that there was any breach of the agreement to provide services resulting in a partial failure of consideration.
As already stated, the lower court found the Consulting Agreement to be ambiguous, uncertain, and unindicative of the true intention of the parties to the agreement. Thus, parol evidence was admissible to clarify the ambiguity and to show the true intent of the parties. Dixie Campers, Inc. v. Vesely Co., supra. After hearing *928 the evidence, the court concluded that neither party's version expressed the true intent, but that from the testimony and actions of the parties, it was obvious that their actual whole agreement contemplated that Guerriero would personally and through his corporate employees perform management, planning and supervisory tasks for Howard.
Article 1956 of the La.Civil Code provides that:
When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent by the other, furnishes a rule for its interpretation.
In some instances the construction placed upon a contract by the parties, as shown by the manner in which it was executed by them after its confection, is the best evidence of the meaning of the contract or the intent of the parties when they entered into the agreement. Pendleton v. McFarlane, 222 La. 569, 63 So.2d 1 (1953); Marcann Outdoor, Inc. v. Hargrove, 140 So.2d 815 (La.App. 3d Cir.1962).
In the instant case, Guerriero's actions, after the execution of the documents purportedly expressing the agreement and prior to July 25, 1980, included reviewing the files of Howard's existing wells, giving advice and rendering services to correct problems with those wells, setting up a semblance of a production office on those wells, offering Howard investment opportunities, supervising the payment of bills on Howard's existing wells, and performing services in connection with site selection and preparation of the actual drilling of the Bobo No. 1 well. The complexity of all these acts certainly refutes the contention that the parties only intended the "consultation and advice" by Guerriero during the year 1980 such as "TR and Guerriero deemed convenient." Our review of the record leads us to conclude that the trial court was not clearly wrong in its factual conclusion that the "Consulting Agreement" as written did not set forth the entire agreement between the parties. Furthermore, in comparing Guerriero's actions prior to the drilling of the Bobo No. 1 well, and his actions subsequent to the drilling of that well, we cannot say that the trial court was clearly wrong in its conclusion that, despite repeated requests, Guerriero and TR breached the agreement by failing to complete that well, failing to proceed with further development on the Bois d'arc field, and by being disinterested in and unavailable to perform the agreement after that time.

SPECIFICATION OF ERROR NO. 3
Here appellant claims that the trial court erred in failing to find that Howard had failed to put TR Drilling in default under the Consulting Agreement and therefore could not refuse payment under the note. Appellant argues that if the trial court is correct in finding that Guerriero or TR Drilling breached the Consulting Agreement, it was a passive breach under La. C.C. art. 1931 and that damages would be due only from the time the debtor was put in default in a manner specified by law. See La.C.C. arts. 1911, 1933. Appellant further argues that there was no putting in default so no damages are due.
While arguing the failure to put in default, appellant, in brief, at the same time reiterates as it did throughout these proceedings, that the Consulting Agreement was a meaningless document designed solely to benefit Howard from a tax standpoint and that the true agreement was simply a sale of stock and, alternatively, that if the Consulting Agreement had meaning, it meant exactly what it said and was fully performed by Guerriero or TR Drilling.
In Wadkins v. Wilson Oil Corporation, 199 La. 656, 6 So.2d 720 (1942), plaintiffs sought cancellation of a mineral lease alleging failure to fully develop the leased premises in accordance with the newest methods. Defendant contended the plaintiffs had failed to place it in default. The court stated:
The defendant filed in this court another exception of no cause or right of action. This new exception is founded *929 upon the fact that the plaintiff did not allege or prove that a demand for performance of the contract was made in one of the ways prescribed by article 1911 of the Civil Code for putting a party in default in the case of a passive violation of the contract. Article 1933 of the Code provides that, when there is only a passive breach, and not an active breach, of a contract, damages are due only from the time the obligor is put in default; and article 1911 provides that a demand, in order to have the effect of putting the obligor in default, "may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses." But it is well settled that, if the defendant in a suit for damages for an alleged passive violation of a contract denies the alleged obligation, or denies that it was violated, it is not necessary for the plaintiff to allege or to prove that a demand for performance of the alleged obligation was made in one of the forms prescribed by article 1911 of the Civil Code. The reason for that is that it would be inconsistent for one to deny the obligation of a contract, or to deny that he had violated the obligation, and at the same time urge that a proper demand might have brought forth a performance of the obligation on his part. [Citations omitted.] 6 So.2d at p. 725
See also, Louisiana Farms Co. v. Yazoo & M.V.R. Co., 179 La. 539, 154 So. 445 (1934).
Here, assuming but by no means holding that any breach of the agreement by Guerriero or TR was passive, appellant, in consistently contending that the Consulting Agreement actually imposed no obligation, and alternatively, if it did, was not violated but completely complied with, has caused it to be unnecessary for Howard to either allege or prove that appellant had been placed in default.
Furthermore, the affirmative defense of failure of consideration is not, in the true sense, an action seeking damages. This, with the trial court's factual finding that the parties, through their actions, mutually terminated the agreement after the breach, makes a putting in default unnecessary.

SPECIFICATION OF ERROR NO. 4
Here, appellant complains that the trial court erred in finding a mutual termination of the contract between Howard and TR Drilling.
The lower court stated in its reasons for judgment:
The court is convinced that Howard was satisfied that he had "value received" when he paid $235,000 in July, 1980; and it is so concluded. Lacking specific evidence upon which to base a precise calculation but convinced there was a partial failure of consideration by Guerriero and TR Drilling as to the note sued upon, the court relies upon the actions of the parties for its solution. Following the dispute over the pump and the demise of the corporation, Howard and Guerriero parted and went their separate ways. While making legal contentions in the contradictory postures each has taken in this suit, neither made any effort to rectify the situation. Their actions and their testimony convinces the court that they were mutually terminating their association and their agreement. The cherished hope and the pie in the sky which spawned and nurtured the agreement had both vanished; each was licking his wounds; neither really wanted or needed the other. Both got what they went afterexploration at the end of the rainbow. The court therefore concludes that neither owes the other any money.
Parties who have legally entered into agreements are at liberty to reform or revoke them. La.C.C. art. 1901 provides:
Agreements legally entered into have the effect of laws on those who have formed them.
They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
They must be performed with good faith.
*930 See also RTL Corp. v. Manufacturer's Enterprises, Inc., 429 So.2d 855 (La.1983); La.C.C. art. 1945.
The trial court found that the parties' actions after the breach by Guerriero in July 1980 indicated a mutual abandonment of the agreement. Guerriero, for his part, became disinterested and made no further effort to perform his managerial obligations under the agreement. Howard, for his part, went elsewhere to secure the same services from others as he had contracted to secure from Guerriero. In addition, the court found that Guerriero, TR and Howard did not want further business association with each other as contemplated by their prior agreement; however, after the parties split, they did amicably negotiate for the sale of one of TR's drilling rigs to Howard for use in drilling the second Bobo well. This conduct is inconsistent with the argument that the parties were still clamoring to enforce the original agreement. It is more consistent with the finding that Guerriero and TR no longer wanted to perform services for Howard and that Howard was willing to end the association and seek those services elsewhere. Thus the trial court's findings have substantial support in the record and are not manifestly erroneous.
The trial court found that there had been a breach of the original agreement. We agree that Guerriero's actions, viewed alone, would constitute a breach of the agreement. We feel, however, that this does not negate the conclusion that the original agreement was mutually rescinded. Rather, it fortifies that conclusion. RTL Corp. v. Manufacturer's Enterprises, Inc., supra at 856-57. Under these circumstances, rescission was a reasonable alternative between reasonable businessmen when it became clear that neither side wanted to fulfill its obligations. Only the decline of financial fortunes impelled the parties to seek to enforce an agreement which, at an earlier time, seemed to have lost its usefulness and necessity, and which was willingly abandoned. This does not alter the finding that the agreement was terminated and that all parties were satisfied with consideration given and received at that time.
This specification lacks merit.

SPECIFICATION OF ERROR NO. 5
Here, appellant contends that the lower court erred in fixing the amount of the partial failure of consideration without proof of the specific value of that failure.
The trial court found that following Guerriero's failure to complete the Bobo No. 1 well and the declining fortunes of TR Drilling, which occurred in close proximity of time, the parties to this litigation "parted and went their separate ways." The court interpreted their actions and testimony to constitute a "mutual terminating" of their association and agreement. The lower court noted that on July 11, 1980, Howard paid $235,000 on the total $375,000 obligation. This amount was accepted even though the whole amount was due at that time. Thus, the court concluded at that point that Howard was basically satisfied that he had "value received." Shortly thereafter, the parties' difficulties began and each went their separate ways with slightly more than 5 months remaining on the Consulting Agreement. The lower court found that neither party made real efforts to rectify the situation until forced to take contradictory positions because of this lawsuit filed much later in July of 1981, when TR's financial fortunes were grim. The record reveals that Guerriero only made a half-hearted effort toward collecting the $140,000 balance allegedly due and this effort was only made after Howard wrote a letter requesting that Guerriero buy back his (Howard's) interest in TR Drilling.
At the point of their parting, the lower court concluded that neither party wanted or needed the other. Almost 7/12ths of the year was gone, $235,000 had been paid and on paper $140,000 was allegedly still due. The court found that Guerriero and TR did not want further association with Howard and that Howard made other arrangements for the drilling of a second well on the new *931 leases and for development of those leases. In fact, Guerriero negotiated with Howard, Golson and Howard's partner for the sale of one of TR's drilling rigs which was consummated in September of 1980. This transaction lends credence to the conclusion that the parties had indeed rescinded their agreement.
Our law recognizes the general principle that where there is a legal right to recovery, but the damages cannot be exactly ascertained, the courts have reasonable discretion to assess the damages, based on the facts and circumstances. La.C.C. art. 1934(3); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). Additionally, the trier of fact has much discretion in assessing quantum of damages and we will not disturb his assessment absent a clear abuse of this much discretion. Prevost v. Cowan, 431 So.2d 1063 (La.App. 1st Cir. 1983).
Furthermore, in the case of a rescinded agreement, the trial court is permitted to determine the value of compensation for partial performance rendered until the breach. See Henry Brothers, Inc. v. Bergeron, 241 So.2d 49 (La.App. 3d Cir. 1970); C.M. Penn & Sons v. A. Giambelluca Const. Co., 259 So.2d 594 (La.App. 1st Cir.1972). The concept of partial failure of consideration is also embraced by our commercial laws, where it is stated that against a person who lacks the rights of a holder in due course, "Partial failure of consideration is a defense pro tanto whether or not the failure is an ascertained or liquidated amount." La.R.S. 10:3-408.
Although often the parties to a rescinded obligation must restore each other to their position as it existed before, Roberson v. Maris, 266 So.2d 488 (La.App. 4th Cir.1972), this is not always the case. When partial payment has been made, and partial performance rendered, the trial court is correct to assume that the values were equivalent. La.C.C. art. 1768.
Applying these principles to the instant case, we reiterate the trial court's finding that Guerriero refused to complete the Bobo No. 1 well almost simultaneously with TR's decline of fortune. Howard paid, nevertheless, $235,000 of the total $375,000 debt on July 11, 1980; Guerriero accepted this partial payment even though he could have demanded the full sum. This supports the finding that the parties were, at the time, mutually satisfied with the values received. When the difficulties began shortly afterwards, the parties went their separate ways; slightly over five months still remained on the Consulting Agreement.
The trial court found the parties exerted no effort to enforce the contract until this suit was filed a year later, after TR's financial outlook had indeed grown grim. Their intentions must have been mutual, since Howard only sent one letter requesting that Guerriero repurchase Howard's interest in TR Drilling, and Guerriero answered with a half-hearted effort to collect the $140,000 balance.
The trial court determined that at the time of their parting, almost 7/12ths of the year was gone, $235,000 had been paid, and $140,000 was still due. A precise calculation of the amount of the partial failure would be difficult and we feel the trial court placed a reasonable value on it, considering the imprecision of the contract and the relative passage of time. This amount was satisfactory to the parties when they mutually terminated the agreement. Thus the trial court's assessment of the amount of partial failure of consideration was not an abuse of discretion.
This specification lacks merit.

HOWARD'S ANSWER TO THIS APPEAL
In addition to answering TR's petition on the note, Howard filed a reconventional demand and a third party demand against TR and Guerriero seeking the return of the $235,000 Howard paid on July 11, 1980 and damages in the amount of $21,000 allegedly caused by Guerriero and TR's failure to complete the Bobo No. 1 well.
*932 As already stated, the lower court found that as of July 11, 1980, Howard had received value for the $235,000 paid on that date. This factual conclusion is not clearly wrong and we will not disturb it.
With regard to the denial of $21,000 in damages requested, the lower court found the evidence did not preponderate that Howard actually lost $21,000 in oil revenues because of TR's delay in completing Bobo No. 1. Again, this factual conclusion is not manifestly erroneous and we will not disturb it.

CONCLUSION
For the foregoing reasons, the judgment of the lower court is affirmed in its entirety. Costs of this appeal are assessed one-half to appellant and one-half to appellee.